United States v. Lillard, when you're ready. Good morning, Your Honors. I'm Greg Murphy with the Office of the Federal Public Defender. I was appointed as amicus in this case, but I'm arguing today for Mr. Lillard, and I will endeavor to reserve two minutes' rebuttal and keep my eye on the clock. Your Honors, the Mandatory Victim Restitution Act as a whole endeavors to balance the victim's right to restitution against the defendant's needs for subsistence, and to do that in a way that minimizes the administrative burdens on the court. That's what the Supreme Court told us in Lagos. And given that entire statutory purpose, sort of framework, and those three purposes, we think that the best reading of Section 3664N is that it is a limited exception to the ordinary process for recovering that applies only when somebody receives substantial assets after having been sentenced to a period of incarceration related to the judgment they gave rise to the restitution. So the question in front of us really is what is the meaning in this context of periods of incarceration? Yes, Your Honor. And it's not any period. In your view, it's not any period of incarceration. In your view, it's a period of incarceration connected to this sentence? Your Honor. Could it be another subsequent period of incarceration after another conviction, not pretrial, but after another conviction? Could it be? Your Honor, we think the best reading of that phrase, period of incarceration consistent with the statutory purposes, is any period of incarceration related to the judgment that gave rise to the restitution order. We think that's. The statute doesn't say that. It does not say that. And the Congress could have had the statute say that. It could have. And at the end of the subsection, it talks about resources to any restitution or fine still owed. So the Congress clearly and obviously contemplated that this is a period of incarceration, obviously, after the restitution in the original case was awarded, and so could have made it clear that it only applied to either post-sentence or incarceration for the instant offense. Your Honor, I agree that the statute is not as clear as I would like. I think that the way that the statute makes the most sense is in context of the rest of 3664. And partly that's because a broader reading of 3664N consists, that is, the reading period of incarceration as the government desires so that it applies to pretrial detention, so that it applies to any period of custody regardless of duration or purpose, regardless of jurisdiction, creates results that undermine the broader statutory framework. Like what? For example, under the government's reading of 3664N, somebody who has been ordered to make payments according to a schedule and does make payments according to that schedule that's ordered by the district court, if that person was taken into custody for several days on a state warrant and released but received a paycheck during that period, even though the person had done nothing at all to violate the court's order, would be, under the government's reading of 3664N, would be obligated to disgorge that money because it was received, and in the government's view, substantial, during a period of incarceration, which the government defines as any period of confinement at all, regardless of jurisdiction or duration. So that, to me at least, seems unlikely to be consistent with the provisions of 3664N that are trying to protect both the defendant's right to subsistence but also the victim's ability to collect restitution. It also creates some of the same dilemmas that this court noted in Latimer. That was the case involving the guideline, use of the phrase, period of incarceration. In that case, one thing that was important to this court was that the practical result of the government's interpretation was to treat people who had the means to get out on bond pretrial differently than people who did not have those means. And so here, for example, if you accept the government's view of this, then somebody who is able to pay a cash bail or somebody whose family is able to pay a cash bail and then receives a paycheck will have that paycheck supervised, assessed, balanced by the district court pursuant to 3660, the other provisions of 3664. So it's your view only a period of incarceration related to the offense that gave rise to the MERVA obligation? What we've argued, Your Honor. Yes? To be direct, yes. What we've argued in our paper, what I've argued in my papers, is that the easiest issue is whether or not it applies to pretrial detention. I have said also that I think that it should apply only you. The court asked me to address two questions, the second one being whether it should be limited to the offense of conviction originally. And I've argued that it should apply to any period of incarceration related to that, primarily because of what the Supreme Court says in Lagos about the desire to minimize administrative burdens. And you can imagine a situation where there is a, you know, a reading that it doesn't matter where the jurisdiction of confinement is, would set up conflicts between, say, two federal judges, a federal judge and a state judge, state authorities, all of whom want to have producing or engaging with the person's finances in some ways. But to decide the case in front of us, the only thing we need to decide is whether or not a period of pretrial incarceration counts as incarceration for purposes of this statute. Yes, Your Honor, and that's what I've urged the court to decide as a preliminary matter. I do think it's a closer question for the reasons we acknowledged in our brief, but I do think the better reason to answer Your Honor's question, the better reading would to limit it even further. Largely that's because I think 3664- So under your better reading, for example, if someone commits Offense A and is subject to restitution and ten years later commits Offense B, totally unrelated, is incarcerated and wins the lottery, what happens? Under your view, would he get the lottery winnings? Oh, no, absolutely not. And to be clear, we're not suggesting that. An important part of our argument is that there are other provisions that would apply under those circumstances. So, for example, on page 27 of Mr. Lillard's opening brief, for example, he complains that you can't use 3664-N because nobody had ever made any assessment of his sort of assets and needs, and he says, and this is sort of consistent with what's going on before the court deciding POTH. And he says, look, what you ought to do when you don't have that is you ought to proceed either under 3664-K, I believe, which requires modification based on a change in circumstances, or under 3613-A, which basically starts from scratch when the person has failed to make three restitution payments in a default hearing. Suppose we agree with you. What happens? Well, then I think we go back to square one. No longer in pretrial detention, your client. He is no longer in pretrial detention. So your court is asking me about mootness. So I think the question is not moot for several reasons. First, there are other issues besides the ones I was asked to address before the court, including the question of whether or not it was ever appropriate to use 3664-N when there had never been any assessment either at the sentencing or subsequent about his financial circumstances. And he preserved that, and I think that that's an issue that is not addressed by the question of whether or not he's in custody. If we rule in favor of you and limit the holding to saying this statute does not apply to a period of pretrial detention, what happens? Then the government would return Mr. Lillard's money, I suppose, and then we would proceed from scratch. So they would then have to use a different mechanism than 3664-N to try to collect his money, both because they would be under the obligation to show that the money was received during a period of incarceration, and this Court's holding would conclude that it was not, and then also because this whole procedure, the entirety of the Mandatory Victim Restitution Act, only really works if you have some sort of baseline analysis of his financial situation. And I would note for the Court, and I see I'm running out of time, that Mr. Lillard did make an argument before the district court that his subsistence needs were not zero, that he, for example, needed money to contact his family, that he needed money to pay for commissary expenses. And in the one case that any of us have ever been able to find that really addresses this issue in a practical sense from the district court, that's the Hester case that's in Mr. Lillard's brief, that's exactly what Judge Moskowitz did. He said, I'm going to let you have $50 a month from this money for your needs in prison, but I'm going to require the remainder of the money that you're receiving to be paid out. And he set a new payment schedule, and that's essentially what we're asking him to do. Thank you. Let's hear from the other side, and we'll make sure you get a chance to respond. Good morning, Your Honors. May it please the Court. I'm Kyle Forsyth on behalf of the United States. I plan to first address the mootness question that the Court raised in its order last week, and then discuss the merits of the statutory interpretation question. And, of course, if the Court has questions about other issues, I'm happy to address those as well. With respect to mootness, this Court has held that the standard for deciding whether an appeal is moot is whether the appellate court can give the appellant any effective relief if it agrees with the appellant's view of the merits of the case. And applying that standard, which, just to cite a recent case from the Ninth Circuit, a 2016 decision that articulated that standard, In Re Castaic Partners, 823 F3rd 966. Applying that standard here, there is no effective relief. But wait a minute. If we hold that the government is not entitled to seize this during the time he was in pretrial custody, which is when it was seized, I guess the government would have to give it back. It would not then fall under N because that applies only if it's received while in period of detention. So you've got to then go back and try to get it a different way, and you can't get the whole amount. Or at least you may not be able to get the whole amount. So it seems to me as though there is some effective relief here. Your Honor, my answer to that is that if the Court were to agree with Mr. Lillard's interpretation of the statute and were to order as a remedy to restore the money, refund the money to his Bureau of Prisons Inmate Trust Account, because of the change in his custodial status, he is now undisputedly in post-conviction incarceration. Because of that change, 3664 N now applies to him even under— No, I think not necessarily because it's received only in a very special sense. You've just given him money back that you already owed him. That's not receipt. It was promised originally on the receipt when he was in pretrial detention. So I'm not sure that's a slam-dunk winner for you. I understand your point, Your Honor. Our argument would be that that is receipt of the funds during a period of incarceration. You would say it was from any source, even if it probably wasn't a source particularly contemplated by the Congress. Yes, Your Honor. The statute is broad. It says received substantial resources from any source. And so it is an all-inclusive phrasing that the Court used. I'm not sure I'm sitting on this next case. But if you're trying to argue to me that this is assuming the holding on their side, right, but assuming the holding for them on the question of pretrial detention, money wrongfully seized by the government the first time around now restored to him now comes back under precisely the same section as a result of your wrongful seizure is now receipt and you get it all over again, that's uphill work. Well, Your Honor, if I could turn to the merits question, I'd like to address that. And I think it's important to understand the factual and legal context in which the district court's payment order was entered. From the moment of Mr. Lillard's conviction in 1998 when he was ordered to pay $79,000 in restitution, all of his non-exempt assets, all of his property and rights to property, were subject to a statutory judgment lien for the benefit of his crime victims. And so this $6,600 was never his free and clear. It was encumbered by a judgment lien. And there's no dispute that that was he under some sort of a payment schedule for restitution? He was not. No, he was not. Was he under an obligation to simply, before he was taken into pretrial custody, was he under an obligation to simply hand over all the money he had? When you say there was a judgment lien but no payment schedule? I mean, what was he supposed to be doing in terms of his restitution before he was put into this pretrial detention? His criminal, his judgment said that his restitution was due immediately, but the judge did not impose a payment schedule. So he did not have an affirmative obligation to be making monthly payments, the same that a debtor who has a payment schedule would be obligated to do. However, because of the judgment lien, the United States has the authority and indeed the obligation under 18 U.S.C. 3612 to enforce his restitution order and to collect. But it sounds like you weren't doing it. Mr. Lillard, unfortunately, since his conviction in 1998, has spent the majority of his life in prison or while out of prison engaging in further fraud schemes. He's had two subsequent Federal convictions since that time. And so our ability to find him in gainful employment and find assets and income that we can collect has unfortunately been minimal. But when we found out about this $6,600 that was in his inmate trust account, we looked to the statute that we thought was applicable, 3664N, substantial resources received during a period of incarceration, broad unrestricted language that should apply to any period of incarceration. The counsel, if the court disagreed with you with regard to pretrial detention, the government would not be remedialist with regard to the $6,600 that could go under an alternative section? That's correct. The government would not be remedialist. There is 3664K in which, under a change in the defendant's circumstances, you can ask the sentencing judge to modify a payment schedule. There's also the potential of using a common law offset rights if this money is held in his inmate trust account. But I want to address this, the distinction that amicus draws in the brief between pretrial detention and post-conviction incarceration. And amicus argues that there's a clear distinction between those terms and how they're used in the statutory scheme. But as we point out in our brief, the word detention is also used in the federal habeas statute in 2255E to refer to a period of post-conviction custody. And I would add to that 18 U.S.C. 5039, which refers to, which uses the term incarcerated to refer to both inmates who have been convicted of a crime and, importantly, those who, quote, are awaiting trial on criminal charges. And so depending on the context, detention and incarceration are both broad enough to encompass both pre and post-conviction. But the context, I think, is critical. You're looking at a statute that sets up the procedures by which the court, with the assistance of the probation office and so on, determines the amount of restitution and then at sentencing imposes restitution and within the context of that particular statutory section then says any money that comes in during a period of incarceration will be subject, da-da-da-da-da. Now, it seems to me as that clause is written in that context, we're talking about one proceeding at the end of which there is a period of incarceration. And we're not talking about some later precision where he may be in pretrial custody that may or may not result even in a conviction. And so I understand that the word incarceration would bear the meaning in other settings that you asked for. I mean, that's obvious. The question is what is its meaning in this context? Yes, and I think that it's important to look at the word incarceration here in the context of a judgment debtor who owes restitution to his victims whose money is encumbered by a judgment lien and the overall purposes of the MVRA, which are to ensure, to the extent possible, the full collection of restitution for victims of crime. Suppose the panel were to determine that the phrase period of incarceration is capable of two meanings, that a reasonable person reading those words could either come to the conclusion, A, it applies to both pretrial and post-conviction, or B, it only applies to pretrial. What would the panel do? Only applies to conviction, you mean? Yeah. If the panel decides that it can only apply to... No, no, if the panel decides that this phrase can be read in one of two ways, it's ambiguous. One way favors the government, one way favors Mr. Blither. What does the panel do in that circumstance? I would urge the panel to, again, refer to the overall purposes and objectives of the MVRA, which is the statutory context in which you find this phrase. And ignore the rule of lenity? Not to ignore the rule of lenity, but to find that the rule of lenity does not apply to this statute, which is purely remedial. It does not prescribe criminal conduct, and it does not impose a penalty. But that was precisely the purpose of the rule of lenity, that when you have a statute which has criminal overtones, and a phrase within that statute can be read legitimately one of two ways, to use the baseball analogy, tie goes to the runner. Your Honor, in Barber v. Thomas and in Bifolco v. United States, I believe the Supreme Court has applied the rule of lenity in a more limited fashion, not just to any statute that touches upon criminal subjects, but to statutes that either define the scope of prohibited conduct or that impose a criminal punishment. And that's not what 3664N does. So I would urge the Court to interpret it in a way for the benefit of Mr. Lillard's victims. There's no unfair surprise to him here. Again, his money, his assets, have been subject to this judgment lien since 1998. And on that basis, the Court should hold that it applies to him. And I realize we're taking over time. My problem is not with protecting Mr. Lillard. My problem is that what if we hold that subsection N applies any time someone is in pretrial custody, there are going to be a lot of circumstances and we were given one or two in your opponent's argument in which while it may or may not be fair to Mr. Lillard, it might be quite unfair to the others if your interpretation is followed. That's my problem. May I answer, Your Honor? Please, yes. All right. Well, Mr. Lillard... I don't care about Mr. Lillard. That's the premise of what I just said. Right. So applying it to a restitution debtor who's in pretrial detention or pretrial custody doesn't work any unfairness to that person. What if he's on a payment schedule that he's been making conscientiously and he gets a paycheck and all of a sudden, in your view, the whole paycheck goes over even if he turns out not guilty. The period of detention lasts a couple of weeks. He's out, but meanwhile, you get the paycheck. That's the argument. How do you respond? Yes, well, if he were to take that paycheck and put it in a bank account, if he were not in custody, if he were to take it and put it in a bank account, it would be subject to collection through a writ of garnishment. No, no. The premise is that he's on a payment schedule and he's making the payment schedule. I'm just making it up. It's $50 a week. He gets his paycheck for $500 and under your theory, the whole paycheck is all of a sudden applied to restitution because he's in pretrial detention. That was the argument. You heard it. Yes, Your Honor, but the payment schedule is a minimum obligation that the defendant has to meet. It doesn't protect his other assets. Okay, thank you. Your Honor, I don't have any further argument unless the court has questions for me. Okay, thank you. Thank you. United States v. Lidler, submitted for decision.
judges: Hawkins, W. Fletcher, Bennett